UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KELLIE R. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00305-JPH-TAB |
| | ) | |
| MANGAS GLOBAL SOLUTIONS, INC., | ) | |
| DAMIEN CENTER, | ) | |
| HOMELESS INITIATIVE PROGRAM, | ) | |
| CITY OF INDIANAPOLIS OFFICE OF | ) | |
| PUBLIC HEALTH AND SAFETY, | ) | |
| INDIANAPOLIS HOUSING AGENCY, | ) | |
| HOUSING AND URBAN DEVELOPMENT | ) | |
| INDIANAPOLIS FIELD OFFICE, | ) | |
| U.S. HOUSING AND URBAN | ) | |
| DEVELOPMENT HEADQUARTERS, | ) | |
| MARION COUNTY PUBLIC HEALTH | ) | |
| DEPARTMENT, | ) | |
| OFFICE OF ATTORNEY GENERAL, | ) | |
| INDIANA STATE SENATE, | ) | |
| OFFICE OF SENATOR MIKE BRAUN, | ) | |
| INDIANA GOVERNOR'S OFFICE, | ) | |
| HERMAN & KITTLE MANAGEMENT, | ) | |
| INC., | ) | |
| JULIAN CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Kellie Watson has filed constitutional claims against fourteen defendants.

Dkt. 1.  After screening, the Court finds that Ms. Watson's complaint fails to

state a claim.  Ms. Watson shall have **through May 21, 2021** to either file an

amended complaint or show cause why her claims should not be dismissed.

1

The Court also **GRANTS** Ms. Watson's motion to proceed *in forma pauperis*, dkt. [2], and **DENIES without prejudice** Ms. Watson's motion for recruitment of counsel, dkt. [3].

## I.
## Screening Order

The Court has the inherent authority to screen Ms. Watson's complaint. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status."). The Court may dismiss claims within a complaint that fail to state a claim upon which relief may be granted. *See id.* In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

**A. Complaint**

The Court accepts and recites the following "well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

From July 2016 through October 2019, Ms. Watson and her family lived in an apartment provided by Defendant Julian Center.  Dkt. 1-1 at 3.  This apartment contained black mold, which harmed her family's health and forced her to euthanize two service dogs.  *Id.* at 1, 3, 5; dkt. 1 at 9.  Ms. Watson alleges that she and her doctor contacted Defendants U.S. Senator Mike Braun, Indianapolis Housing Authority ("IHA"), the Marion County Public Health Department ("MCPHD"), City of Indianapolis, and U.S. Department of Housing and Urban Development ("HUD")[1] about the mold from August to September 2019, but they did not help.  Dkt. 1-1 at 1, 5.  During this time, she also sought a Section 8 Choice Voucher from Defendants IHA and HUD under Defendant Indianapolis' "Continuum of Care," but she did not receive a voucher.  *Id.*

In October 2019, Ms. Watson alleges that she and her family were evicted from their apartment for reporting the mold to Defendant MCPHD, and they started living in hotels.  *Id.* at 1.  Ms. Watson called Indiana State Senator J.D. Ford about her situation, and he contacted Defendant IHA.  *Id.*  In January

---

[1] Although Ms. Watson lists two HUD offices as separate defendants, this order treats both as one defendant.  *See United States v. Sklena*, 692 F.3d 725, 731 (7th Cir. 2012).

2020, Ms. Watson called Defendant City of Indianapolis about housing assistance. *Id.*

In May 2020, Ms. Watson could no longer afford hotels, so she contacted Senator Ford again about her situation, and he referred her to Defendant Damien Center on May 28. *Id.* at 1, 5. The Damien Center paid for Ms. Watson and her family to stay at a hotel for 30 days. *Id.* at 1, 5.

On June 22, Ms. Watson entered Defendant Indianapolis' Coordinated Entry System, a homeless prevention program. *Id.* at 1–2, 5. After 30 days, the Damien Center explained that it had no more funding and referred Ms. Watson to Defendant Homeless Initiative Program ("HIP"). *Id.* at 1. On June 29, 2020, HIP moved Ms. Watson and her family to the Royal Inn Motel, where Ms. Watson did not feel safe because of a deadly shooting, drugs, bugs, prostitution, and COVID-19. *Id.* at 1, 5.

In early July 2020, Ms. Watson located a home that would accept a Section 8 Choice Voucher, and she contacted Senator Ford and Defendant Damien Center about using a voucher that she claimed to qualify for. *Id.* at 1–3, 5. Ms. Watson told Defendant HUD that she wanted to move in on September 1, 2020 and asked for a Section 8 Choice Voucher Application. *Id.* at 3.

On July 31, 2020, Defendant Damien Center moved Ms. Watson and her family to a shelter at the Crowne Plaza Motel. *Id.* at 4–5. Defendant Mangas Global Solutions Inc. runs the shelter at the Crowne Plaza Motel. *Id.* at 5. She alleges that Mangas withholds mail and medical transportation and has

4

allowed certain male employees to enter her room inappropriately after curfew without masks and social distancing, which has caused her to fear for her life and made her too afraid to sleep, take her medication, or bathe at night. Dkt. 1 at 2, 9; dkt. 1-1 at 5–6. She also alleges that Mangas employees don't wear gloves when serving food. Dkt. 1 at 8; dkt. 1-1 at 6. When she asks them to put masks on, she faces "direct verbal abuse." Dkt. 1 at 2. She explains that she appeared on television in December 2020 to report her mistreatment, and now fears confrontation and retaliation. Dkt. 1 at 3; dkt. 1-1 at 4–5.

Ms. Watson has sued fourteen defendants for violations of the Eighth and Fourteenth Amendments. Dkt. 1 at 2. She asks the Court to "relocate [Ms. Watson and her son] with the help of the U.S. Marshals" to a safe environment, and she seeks $9 billion in damages. *Id.* at 9.

### B. Defendants

#### 1. Herman & Kittle Management

Ms. Watson has not made any factual allegations against Defendant Herman & Kittle Management, Inc. *See* dkt. 1; dkt. 1-1. Therefore, any claims against this defendant must be dismissed. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

#### 2. Senator Mike Braun

Ms. Watson has alleged that Senator Braun "emailed [her] and told [her] he would assist" with her housing situation but "[n]othing happened." Dkt. 1-1 at 5. She also alleges that "his Office Staff sent [her] to the wrong department"

when she asked them a question.  *Id.* at 1.  To recover money damages for constitutional violations from a federal government official, a plaintiff must show that there has been "individual participation and involvement by the defendant."  *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011); *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Since Ms. Watson alleges only that Senator Braun did not follow up on an email and has not explained how this action amounts to a constitutional violation, she has not alleged a plausible claim against Senator Braun.  *See, e.g.*, *Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir. 1985) ("Conduct too trivial in its impact on a normal person even to be a common law tort is unlikely to be a deprivation of constitutionally protected liberty."); *Iqbal*, 556 U.S. at 683. Therefore, her claims against Senator Braun must be dismissed.

### 3.  State Government and Federal Agency Defendants

Ms. Watson's seeks damages from: (i) the Indiana Governor's Office, (ii) Indiana's Office of the Attorney General, (iii) the Indiana State Senate, and (iv) HUD, dkt. 1 at 6–9, but these claims must be dismissed because damages are not recoverable against these defendants.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that suits against state governments and state officers in their official capacity are not actionable under 42 U.S.C. § 1983); *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (refusing "to recognize a direct action for damages against federal agencies" under *Bivens*).  While Ms. Watson asks for relocation with the help of the U.S. Marshals, she does not seek injunctive relief against these defendants.  *See Will*, 491 U.S. at 71 n.10

(allowing "official-capacity actions for prospective relief"); *Los Angeles Cty., Cal.*
*v. Humphries*, 562 U.S. 29, 31 (2010) (noting that "prospective relief" includes
an action for "an injunction or a declaratory judgment").

### 4. Private Defendants

Ms. Watson has not alleged facts showing that Defendants: (i) Mangas,
(ii) HIP, (iii) Julian Center, and (iv) Damien Center acted under color of law, as
required under 42 U.S.C. § 1983.[2]  *See Rendell–Baker v. Kohn*, 457 U.S. 830,
842 (1982) (requiring § 1983 defendants' conduct to be "fairly attributable to
the State") (citation omitted).  Therefore, if Ms. Watson wishes to avoid
dismissal of her § 1983 claims against these defendants, she must file an
amended complaint alleging facts that these defendants acted under color of
law.

### 5. Local Government Defendants

Three local government defendants remain: (i) City of Indianapolis,
(ii) IHA, and (iii) MCPHD.  *See Monell v. Dep't of Soc. Servs. of City of New York*,

---

[2] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
any State . . . , subjects, or causes to be subjected, any citizen . . . to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws shall be liable to the
party injured . . . ."  42 U.S.C. § 1983.

436 U.S. 658 (1978).  However, as discussed below, Ms. Watson's claims against them must also be dismissed.

### C. Claims

#### 1. Eighth Amendment

Ms. Watson brings claims under the Eighth Amendment.  Dkt. 1 at 2. However, "the Eighth Amendment, which prohibits cruel and unusual punishment, only applies to convicted prisoners." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 301 n.2 (7th Cir. 2010).  Because Ms. Watson is not a convicted prisoner, her Eighth Amendment claim must be dismissed.

#### 2. Fourteenth Amendment

Ms. Watson's complaint does not specify how the Fourteenth Amendment applies.  *See* dkt. 1 at 2.  Since she has not alleged discrimination based on a protected class, Ms. Watson presumably brings claims under the Due Process Clause.  The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

The "due process guarantee includes procedural and substantive components." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 365 (7th Cir.), *cert. denied sub nom. GEFT Outdoor L.L.C. v. City of Westfield*, 140 S. Ct. 268 (2019).  "The first—procedural due process—allows the government to deprive a citizen of 'life, liberty, or property' only in accordance with certain procedural protections." *Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 767–68 (7th Cir. 2004).  "As distinct from procedural due process, the substantive

8

component of due process protects against certain government actions regardless of the fairness of the procedures used to implement them." *Schaefer v. Goch*, 153 F.3d 793, 797 (7th Cir. 1998) (citation omitted).

Ms. Watson's complaint has not alleged a substantive due process claim. "[T]he Due Process Clause[] generally confer[s] no affirmative right to governmental aid . . . ." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Indeed, the Supreme Court has held that there is no "constitutional guarantee of access to dwellings of a particular quality, or any recognition of the right of a tenant to occupy the real property of his landlord beyond the term of his lease without the payment of rent or otherwise contrary to the terms of the relevant agreement." *Lindsey v. Normet*, 405 U.S. 56, 74 (1972).

Ms. Watson's claims based on her housing situation therefore may rest only on the procedural aspect of the Due Process Clause. "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (citation omitted).

Ms. Watson's complaint references two possible property interests: (1) her lease that terminated in October 2019 and (2) Section 8 housing choice vouchers. *See* dkt. 1; dkt. 1-1; *Covell v. Menkis*, 595 F.3d 673, 675–76 (7th Cir. 2010) ("A protected property interest . . . can arise from a statute, regulation, municipal ordinance, or an express or implied contract, such as

rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").  But Ms. Watson's complaint has not identified any defective procedures the remaining government Defendants used in depriving her of any property interest.  *See, e.g.*, *Pangman v. Sellen,* No. 20-1634, 2020 WL 7042960, at *3 (7th Cir. Dec. 1, 2020) (holding that plaintiff "needed to allege that the defendants [did not] . . . adher[e] to the basic procedural obligations required"); *cf. GEFT Outdoors, LLC,* 922 F.3d at 366 n.6 ("The traditional hallmarks of procedural due process are 'notice and an opportunity to be heard.'") (citation omitted); *cf.* 42 U.S.C. § 1437d(k) (listing administrative grievance procedures for public housing authorities).

Therefore, because Ms. Watson's complaint has not alleged facts supporting a Due Process claim, her Fourteenth Amendment claim must also be dismissed.

### D. Next Steps

Ms. Watson shall have until **May 21, 2021** to show cause or file an amended complaint.  If Ms. Watson takes neither action by that date, her claims will be dismissed for failure to state a claim.  The clerk is **directed** to include a form complaint with Ms. Watson's copy of this order.

## II.
## Motion to Proceed *In Forma Pauperis*

Ms. Watson's motion to proceed *in forma pauperis*, dkt. [2], is **GRANTED**. While *in forma pauperis* status allows Ms. Watson to proceed without prepaying the filing fee, she remains liable for the full fees.  *Ross v. Roman Catholic*

*Archdiocese of Chicago*, 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' . . . but not without *ever* paying fees."). No payment is due at this time.

### III.
### Motion for Assistance with Recruiting Counsel

"Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel." *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, a litigant who is unable to afford counsel "may ask the court to recruit a volunteer attorney to provide pro bono representation." *Id.* (citing 28 U.S.C. § 1915(e)(1)). "Two questions guide a court's discretionary decision whether to recruit counsel: (1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it h[er]self?'" *Id.* (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)). The first inquiry—whether an indigent litigant reasonably attempted to get a lawyer—"is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, No. 17-3184, 2021 WL 456002, at *8 (7th Cir. Feb. 9, 2021).

For the first question, Ms. Watson states that she has contacted five law firms, but no firm has agreed to represent her. *See* dkt. 3 at 2. Ms. Watson has thus made a reasonable effort to obtain counsel, and she should continue that effort. *Cf. Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010) (affirming district court's requirement that litigant contact at least three

attorneys to show reasonable effort).

For the second question, a court considers whether the case's complexity "exceeds [the plaintiff's] capacity as a layperson to coherently present it to the judge or jury h[er]self." *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (quoting *Pruitt*, 503 F.3d at 655). As discussed above, Ms. Watson alleges constitutional violations against several defendants for events that occurred with her housing. In her motion to recruit counsel, Ms. Watson argues that she is "ignorant to the laws," so she "need[s] help making sure to explain the entire situation with the laws attached." Dkt. 3 at 2. At the pleading stage, however, "Plaintiffs need only plead facts, not legal theories," *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014), and Ms. Watson should be well situated to present the facts surrounding her housing situation. Moreover, since this case is in the earliest stage of litigation, "the district court faces the difficulty of accurately evaluating the need for counsel." *Rosas v. Advocate Christ Med. Ctr.*, 803 F. App'x 952, 954 (7th Cir. 2020); *see Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (finding that "any accurate determination regarding [a litigant's] abilities or outcomes of the lawsuit" to be "impossible" when a case is "still in its infancy").

Ms. Watson's motion also states that she has no difficulty reading or writing English and attended college until she was a sophomore. Dkt. 3 at 2. And although she has certain mental health issues that make it hard for her to "stay focused on a schedule to answer motions" and to "explain all the details + not forget important facts documents," dkt. 3-3 at 3, she has successfully filed

12

a motion to proceed *in forma pauperis* without the assistance of counsel, dkt. 2, and her other filings thus far have been coherent. *See Ward v. Hoffman*, 670 F. App'x 408, 411 (7th Cir. 2016) (holding that the district court "properly denied" plaintiff's motion to recruit counsel because "his prior filings reflected his competence to litigate the case"). And if circumstances make it difficult for Ms. Watson to comply with deadlines in this case, she may file a motion for an extension of time. *See* Local Rule 6-1.

Based on the early stage of this litigation, Ms. Watson's educational background, and her filings in this proceeding thus far, Ms. Watson has not demonstrated that the case exceeds her capacity to present it at this time. As a result, her motion for assistance in recruiting counsel is **DENIED without prejudice.**

## IV.
## Conclusion

For the reasons discussed above, the Court **instructs** Ms. Watson to show cause or file an amended complaint by **May 21, 2021**. If she does not do so by that date, her complaint will be dismissed without prejudice. The Court also **GRANTS** Ms. Watson's motion to proceed *in forma pauperis*, dkt. [2], and **DENIES without prejudice** Ms. Watson's motion for recruitment of counsel, dkt. [3].

**SO ORDERED.**

Date: 4/22/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

13

Distribution:

KELLIE R. WATSON
456 N. Meridian Street
Unit 44742
Indianapolis, IN 46244